Luke Busby, Esq.
Nevada Bar No. 10319
316 California Ave.
Reno, Nevada 89509
(775) 453-0112
(775) 403-2192 (Fax)
luke@lukeandrewbusbyltd.com

*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| L.G. a minor, by and through his parent and natural guardian JEFF GORELICK;<br><br>Plaintiff,<br><br>vs.<br><br>WASHOE COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada; Superintendent of the Washoe County School District KRISTEN MCNEILL; and Washoe County School District Area Superintendent MICHAEL PAUL._____/ | Case No.: 3:22-cv-00228-MMD-CLB<br><br>**PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

COMES NOW, Plaintiff L.G., a minor, by and through his parent and natural guardian JEFF GORELICK, by and through the undersigned counsel, and hereby files the following Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction against WASHOE COUNTY SCHOOL DISTRICT ("WCSD"); Superintendent of the Washoe County School District KRISTEN MCNEILL

("McNeill") and Washoe County School District Area Superintendent DR. MICHAEL PAUL ("Paul")  for violation of L.G.'s right to be free from unlawful seizure in violation of the Fourth Amendment to the United States Constitution.

This motion is made and based upon all the pleadings and records on file for this proceeding together with every exhibit that is mentioned herein or attached hereto (each of which is incorporated by this reference as though it were set forth herein haec verba), if any there be, as well as the points and authorities set forth directly hereinafter.

## MEMORANDUM OF POINTS AND AUTHORITIES

**Background**

SafeVoice[1] is an anonymous reporting system used to report threats to the safety or well-being of students in Nevada schools. SafeVoice was established by the Nevada Department of Education under Senate Bill 212 in 2017 to prevent violence at schools.  SafeVoice is administered by the Nevada Department of Education in coordination with Nevada Department of Public Safety, and provides students a phone line and an app to submit anonymous tips concerning their own safety or that of others.  SB 212 is codified in NRS 388.1451 *et seq*.

L.G. is a well known student by the administration at Reno High. L.G. is scheduled to graduate from Reno High in 2022, a year early due to his taking extra classes.  L.G. takes advanced placement and honor level courses. L.G. is a politically active student at Reno High School.  He is a campaign finance intern for Senator Cortez Masto.  L.G. is also involved in groups like Students Demand Action,

---

[1] http://safevoicenv.org/

High School Democrats.  L.G. frequently posts on his social media promoting his political views, and sits on the safety committee as a student representative at Reno High.  L.G. has also appeared at several WCSD school board meetings and has provided public comment on several issues facing public schools.  *See* Verified Complaint at EFC #1.

On or about May 5, 2022 during the lunch period, school police officer Webb approached L.G. and told him that the school had received an anonymous tip from SafeVoice that L.G. had brought a firearm to school. L.G. voluntarily offered to let Officer Webb search his truck. Officer Webb searched L.G.'s truck and, satisfied that there was no weapon, then told L.G. he did not need to look in his backpack. Officer Webb was polite and professional and L.G. had no objection to cooperating with him. *Id.*

Later on May 5, 2022, Dean of Students Brian La Torre, along with officer Webb came to L.G., in a school hallway and searched his bag in response to another anonymous tip from SafeVoice.  L.G. voluntarily consented to this search. There was no weapon of any sort in the backpack.  *Id.*

On or about May 6, 2022 Assistant Principal Krista Kruger came to L.G.'s classroom and advised that they had received yet another anonymous tip from SafeVoice and then asked L.G. to come to the back of the class where they again searched his backpack.  Kruger did not seek consent for this search. L.G. did not provide express consent for this search but he did not object.  Again, there was no weapon in L.G.'s backpack. *Id.*

On or about May 9, 2022 Krista Kruger and Brian La Torre came to L.G.'s classroom and advised the teacher that they had another anonymous tip from SafeVoice and needed to search his backpack. Krista Kruger and Brian La Torre took L.G.'s bag without consent and started the search before L.G. had time to get to the back of the room. L.G. again neither consented nor objected because he was unsure if he had the right to deny access. L.G.'s bag was searched again with no weapon being found. As the meeting was wrapping up, L.G. said "are you guys going to search my truck?" To which they responded that they probably should. L.G.'s truck was the searched by Krista Kruger and Assistant Principal Teri Salgado. *Id.*

Also on or about May 9, 2022 L.G. asked Officer Webb if he could refuse consent to the searches in response to the anonymous tips from SafeVoice, to which Officer Webb responded that L.G. could refuse consent.  Also on or about May 9, 2022, L.G. asked I Krista Kruger if he was required to consent to the searches.  Kruger told L.G. "no" but indicated L.G.'s parents would be called to seek consent if he refused.  L.G. asked Kruger what would happen if his parents refused consent for the searches.  L.G. was told by Kruger that he could return to class as usual, as the school had no further ability to conduct the search. *Id.*

On May 16, 2022 LG was asked by Brian La Torre to submit to a search again based on an additional anonymous tip from SafeVoice.  L.G. said "I am not doing this again; I have the right to deny a search." The search did not occur and L.G. was then permitted to return to class. *Id.*

4

Also on May 16, 2022, near the end of the school day, Reno High Principal Kris Hackbusch advised L.G. that he would not be permitted to return to class until he submitted his backpack to a search. *Id.*

On May 16, 2022 Jeff Gorelick emailed Principal Hackbusch in an attempt to persuade the searched of L.G. to be discontinued in response to anonymous tips because L.G. is a good student with no discipline issues, that the searches to date had proven that the anonymous reports were false, and that continued search violated L.G.'s constitutional rights. *See* Exhibit 1 to Verified Complaint at ECF #1-1.

On May 17, 2022 L.G. and his father Jeff Gorelick went to Reno High School at 7:00 a.m. to discuss the searches that L.G. was subject to.  A meeting was held in Principal Hackbusch's office and was recorded with the permission of all parties. The recording of the meeting is attached hereto as Exhibit 2 to Verified Complaint at ECF #1-2.   Principal Hackbusch, Krista Kruger, and school district police officer named Jeff (last name not recalled) attended the meeting. Principal Hackbusch stated that he was advised by his superiors that he had the obligation to conduct a search of L.G.'s before he would be allowed to return in person to school with his backpack. Yet, Principal Hackbusch stated that if a SafeVoice tip is received about a weapon it was "protocol" to conduct a mandatory search.  *Id.*  Jeff Gorelick advised that he had looked L.G.'s backpack and there was no weapon.  L.G. refused the search and was advised that he could not attend classes with his backpack (which contained necessary books and his computer used to take notes).  Everyone present shook hands and the meeting ended with L.G. returning home.

On May 17, 2022 prior to 9 a.m. in the morning Jeff Gorelick placed a telephone call to Dr. Michael Paul, Area Superintendent for the Reno High School area for WCSD. That call was returned in the late afternoon. Gorelick asked Dr. Paul if there was a written protocol requiring a search of student personal property every time an anonymous tip was received through SafeVoice. *See* Declaration of Jeff Gorelick in Exhibit 3 attached to the Verified Complaint at ECF #1-3. Dr. Paul responded that he didn't know if the protocol was written but that was in fact the protocol. He further stated that if it happened a hundred times the searches would be conducted a hundred times and it did not matter who the student was or the student's history with the school. Paul stated that if there was a one tenth of one percent chance of a weapon being in the backpack they would conduct the search in the interest of student safety. Gorelick asked if Paul would forward any written policy to him and that ended the call. *Id.*

The evening of May 17, 2022, L.G.'s mother Allison Gorelick wrote an email to Superintendent McNeill and certain members of the school board, attached as Exhibit 4 to the Verified Complaint at ECF #1-4. The email sought to have the board and Superintendent McNeill address the policy of requiring a search of a student in response to an anonymous tip from SafeVoice, even where such a search is unreasonable.

On May 18, 2022 Superintendent McNeill responded by email defending the policy and forwarding several items including the Student Behavior- Administrative Procedures Manual. The email is attached as Exhibit 5 to the Verified Complaint at ECF #1-5. McNeill contended that the required searches of L.G. were justified,

despite indicating that WCSD had "reached out at the state level of the SafeVoice system and are working with them to look into the recent tips concerning Lucas about a possible misuse of the system." *Id.*  A copy of the Student Behavior Administrative Procedures Manual forwarded by McNeill in her email is attached to the Verified Complaint as Exhibit 6 at ECF #1-6.  However, the manual contains no automatic search protocol, rather it states that an unconsented search can only be conducted on ***reasonable suspicion*** by the administrator that the student possesses a weapon. See Exhibit 6 to the Verified Complaint at ECF #1-6 page 55. The manual defines "Reasonable Suspicion" as follows:

> Reasonable Suspicion
>
> a.  In those cases requiring a reasonable suspicion as the basis for the search, the school official or employee authorizing the search shall have a reasonable suspicion that the fruits or implements of a crime or unlawful act will be found, or that a weapon or other material the possession of which is prohibited by law or by school district rules, regulation or policies will be found.
>
> b.  A reasonable suspicion is a subjective, good faith belief supported by objective facts, which may include, but are not limited to, the student's age, history and record in the school, the reliability of the information giving rise to the suspicion and the seriousness and prevalence of the problem in the school.
>
> c. The required "reasonable suspicion" must be based on facts relating to a particular student whose person, belongings, automobile, desk or locker is to be searched and such suspicion must arise immediately prior to the proposed search.

Id. at ECF #1-6 page 56.

The actual policy followed by WCSD, as described by Paul and McNeill, is to require a search of any student in response to any anonymous tip from SafeVoice, despite the reasonableness (or not) of doing so.  This *de facto* policy is

straightforwardly unconstitutional, and inconsistent with WCSD's express written policies.

**Jurisdiction and Venue**

This Court has jurisdiction pursuant to 28 U.S.C. 1331 (federal question), 28 U.S.C. 1343 (civil-rights violations), 28 U.S.C. 2201 (declaratory relief), and 28 U.S.C. 2202 (injunctive relief).

**Standard of Review**

A preliminary injunction may be awarded upon a clear showing that the plaintiff is entitled to such relief. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest. *Id.* at 20. In other words, as described by the 9th Circuit, a preliminary injunction may be granted if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest. *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012) (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This same standard applies to a request for a temporary restraining order. See *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), overruled on other grounds in *Winter*.

///

///

**Analysis**

**a. Likelihood of Success on the Merits**

L.G. has plead three causes if action in the Complaint: (1) 42 U.S.C. 1983 claim for violation of his 4th Amendment right to be free from unreasonable searches; a 42 U.S.C. 1983 *Monell* claim because the actions of WCSD are a policy and practice of WCSD; and a claim for Injunctive Relief.

"[T]he existence of a right violated is a prerequisite to the granting of an injunction." *State Farm Mut. Auto. Ins. Co. v. Jafbros Inc.*, 109 Nev. 926, 928, 860 P.2d 176, 178, 1993 WL 385119 (1993) quoting 43 C.J.S. § 18 Injunctions (1978). L.G. has a protected liberty interest under the 14th Amendment in a public education and to attend public school. *Goss v. Lopez*, 419 U.S. 565, 567, 95 S. Ct. 729, 732 (1975).

The Fourth Amendment's "prohibition on unreasonable searches and seizures applies to searches conducted by public school officials." *New Jersey v. T.L.O.*, 469 U.S. 325, 333, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985).  Whether such a search is permissible "depend[s] simply on the reasonableness, under all the circumstances, of the search." *Id.* at 341.  A determination of reasonableness requires "a twofold inquiry: first, one must consider 'whether the action was justified at its inception;' second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).  T.L.O.'s two-part test in the school setting is a limited exception to the warrant and probable cause requirement of the Fourth Amendment. See

*Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995).

Under the first prong of the T.L.O analysis, a school official must have a particularized and objective basis for suspecting legal wrongdoing by a student to justify a search. See *United States v. Arvizu*, 534 U.S. 266, 273 (2002). ("[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity…". *Alabama v. White*, 496 U.S. 325, 329 (1990). A "totality of the circumstances" approach is used to determine whether an informant's tip establishes probable cause - factors including the veracity, reliability, and basis of knowledge of the informant are highly relevant in determining the value of the informant's report. *Id.* at 326. Anonymous tips submitted against L.G. via SafeVoice alone do not constitute a reasonable basis for a search, where multiple recent prior false anonymous tips have been submitted to SafeVoice against L.G.

L.G.'s claim for injunctive relief against McNeil and Paul should succeed because there is a sufficient causal connection between Paul and McNeill's direction to Reno High employees that L.G. is required to be searched and not be permitted to attend school until he consents to be searched, and, hence, the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989). Moreover, for liability to attach, McNeill and Paul have actual supervisory authority over the Reno High employees who committed the violations of L.G.'s rights. *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018).

In *People ex rel. C.C.-S.*, 2021 COA 127 (Colo. App. 2021), a search and seizure of a Colorado student by school officials based solely on an anonymous tip

10

received through Colorado's Safe2Tell hotline, which is Colorado's version of SafeVoice, did not satisfy the Fourth Amendment, and resulted in overruling a the denial if a suppression of evidence motion where the student had marijuana in his backpack.

L.G.'s *Monell* claim against WCSD should succeed as well because all actions of McNeill are a policy or custom of WCSD.  See *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989), a policy or custom becomes official when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.  Local governments are liable for underlying 42 U.S.C. 1893 claims if the deprivation is the result of the agency's custom, policy, or practice. *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). See also *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006).  McNeill, as superintendent of WCSD, was the officer with final policymaking authority within WCSD, including over the decision to continue to require searches of L.G. despite the unreasonableness of doing so in light of the multiple false reports already received against L.G. via SafeVoice.

In order to bring a successful *Monell* claim, L.G.  must show "(1) that he possessed a constitutional right of which he was deprived; (2) that the WCSD had a policy; (3) that the policy amounts to deliberate indifference to L.G.'s constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Id.* L.G. has a constitutionally protected right to be free from unreasonable searches, yet, L.G. has been repeatedly searched based on anonymous tips alone, and WCSD and the defendants have shown deliberate indifference to his rights to be free from

11

unreasonable searches by maintaining that such searches are required despite L.G. and his father's repeated protests to the basis for the searches. The moving force behind the searches is the policy of WCSD to automatically search a student in response to an anonymous tip to SafeVoice despite the fact that the search may be otherwise entirely unreasonable, and as such, unconstitutional.

### b. Irreparable Harm

For a temporary restraining order or preliminary injunction to issue, the moving party must show that the nonmoving party's conduct, should it continue, would cause irreparable harm for which there is no adequate remedy at law. *Dep't. of Conservation & Natural Res. v. Foley*, 121 Nev. 77, 80, 109 P.3d 760, 762 (2005). Where Defendants are likely violating a Plaintiff's constitutional rights, such violations constitute irreparable injury for purposes of issuing an injunction. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). L.G. will suffer irreparable harm if he is denied his right to attend school. L.G. has been prevented from attending his classes at Reno High in preparation for finals and for graduation - this is time that cannot be given back to L.G. after it has passed.

### c. Balance of the Equities

The equities in this case tip sharply in favor of relief for L.G. because of the facial strength of his claim.  WCSD flatly refuses to comply with the plain and well established requirements of the 4th Amendment as well as its own policies requiring that searches of students be reasonable.  WCSD has repeatedly searched L.G. based on the anonymous tips provided through SafeVoice, and the tips have been repeatedly shown to be false. There is no reasonable basis for WCSD to claim

that the safety of its students would be jeopardized if L.G. is permitted to attend school.

### d. The Public Interest Is Served

An injunction in this matter will not have any impact beyond the parties to this case, as such, this factor should carry little weight in the Court's analysis. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) citing *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). However, the public has a strong interest in preventing the violation of a party's constitutional rights, and as such this factor weighs in L.G.'s favor as well. *Id.* at 996.

### e. Bond

Pursuant to FRCP 65,"…the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Federal courts have discretion as to the amount of security and may even dispense with the security requirement altogether where the relative hardships of the parties and the likelihood of success on the merits and concludes that to require any security would be unjust. See *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). No bond should be required in this matter for the issuance of the requested injunction because issuance of the injunction will not result in any costs to WCSD.

### Conclusion

Based on WCSD's demonstrated lack of compliance with its own rules and regulations as well as the 4th Amendment, the Court should issue a temporary

restraining order or preliminary injunction allowing L.G. to attend class at Reno High and to prevent WCSD from conducting any further unlawful searches of L.G. based solely on anonymous tips from SafeVoice.

WHEREFORE, L.G. requests that the Court provide the following relief:

(1) Schedule a hearing to receive evidence if the Court deems necessary; and

(2) Issue a temporary restraining order or preliminary injunction against WCSD requiring WCSD to allow L.G. to attend class at Reno High and to prevent WCSD from conducting any further unlawful searches of L.G. based solely on anonymous tips from SafeVoice.

RESPECTFULLY SUBMITTED this May 24, 2022:

By: _____/s/ Luke Busby, Esq._____

Luke Busby, Esq.
Nevada Bar No. 10319
316 California Ave. #82
Reno, Nevada 89509
(775) 453-0112
(775) 403-2192 (Fax)
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

**CERTIFICATION**

Pursuant to the requirements of FRCP 65(b)(1)(B), the undersigned counsel for L.G. certifies that on May 23, 2022 at approximately 11:50 a.m. an email was sent to counsel for WCSD, Mr. Neil Rombardo and Mr. Chris Reich, notifying WCSD of the Plaintiff's intent to seek a temporary restraining order and apprising WCSD of the basic facts underlying this dispute.  On May 23, 2022, Counsel for WCSD, Andrea L. Schulewitch, responded and corresponded with the undersigned counsel regarding the Plaintiff's intent to seek a temporary restraining order. On May 24, 2022, counsel Schulewich confirmed that L.G. will not be permitted to return to class by WCSD in person with his backpack until his backpack is searched.

RESPECTFULLY SUBMITTED this May 23, 2022:

By:      /s/ Luke Busby, Esq.

Luke Busby, Esq.
Nevada Bar No. 10319
316 California Ave. #82
Reno, Nevada 89509
(775) 453-0112
(775) 403-2192 (Fax)
luke@lukeandrewbusbyltd.com
*Attorneys for the Plaintiff*